**SENGER BROTHERS NURSERY, INC.,**
**f/k/a Marine City Nursery Company, a**
**Michigan corporation, Plaintiff,**

v.

**E.I. DUPONT DE NEMOURS & COMPA-**
**NY, Helena Chemical Company, and As-**
**grow Florida Company, Defendants.**

No. 97–1707–Civ–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 5, 1999.

Ervin Amado Gonzalez, Robles & Gonzalez, P.A., Miami, FL, for plaintiff.

John Armando Boudet, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Orlando, FL, for defendants.

### ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT COMPLAINT, RETAIL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following Motions and Responses:

Dkt. 65 Motion for Leave to Amend and Supplement Complaint

Dkt. 88 Opposition

Dkt. 39 Motion for Summary Judgment

Dkt. 48 Response

Dkt. 66 Motion for Summary Judgment

Dkt. 92 Motion for Summary Judgment

Dkt. 93 Request for Judicial Notice

### BACKGROUND

The original cause of action was filed on July 9, 1997, in a Complaint based on claims of strict liability, negligence, fraud, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of contract (Dkt. 2). On August 21, 1997, Plaintiff filed a Motion to Stay Proceedings (Dkt. 15). Defendant Dupont and Retail Defendants (Helena and Asgrow) responded to Plaintiff's Motion to Stay Proceedings on September 4, 1997 (Dkt. 20). On September 8, 1997, the Court entered an Order requiring Plaintiff to respond, within ten (10) days, to allegations made in Defendant and Retail Defendants' Response to Plaintiff's Motion to Stay Proceedings (Dkts. 15, 21). Plaintiff replied on September 18, 1997, as required by the Court's Order (Dkts. 21, 23).

On November 24, 1997, Retail Defendants filed a Motion for Summary Judgment (Dkt. 39). Retail Defendants' Motion for Summary Judgment asserts that:

1. Plaintiff's claims against Retail Defendants are barred by the applicable statutes of limitation. (Dkt. 39, Paragraph 1).

2. There are no material issues of fact precluding entry of summary judgment in favor of Retail Defendants. (Dkt. 39, Paragraph 2).

3. Retail Defendants are entitled to summary judgment as a matter of law on all claims asserted against them in the Plaintiff's Complaint. (Dkt. 39, Paragraph 3).

On December 11, 1997, Plaintiff filed an Agreed Motion for Enlargement of Time to Respond to Retail Defendants' Motion for Summary Judgment (Dkts. 39, 46). The Agreed Motion for Enlargement of Time was granted on December 17, 1997 (Dkts. 46, 47). On December 17, 1997, Plaintiff filed a Memorandum in Opposition to Motion for Summary Judgment (Dkt. 48).

The Court entered the first Case Management and Scheduling Order on December 31, 1997 (Dkt. 53). In this original Case Management and Scheduling Order a discovery cutoff date of January 30, 1998, was set (Dkt. 53). Trial was set to be scheduled, on twenty days notice, on or after August 17, 1998 (Dkt. 53). On February 10, 1998, the Court entered an Amended Scheduling Order, that set a deadline for filing motions as March 9, 1998 (Dkt. 63).

On March 9, 1998, Plaintiff filed a Motion for Leave to Amend and Supplement Complaint (Dkt. 65). Attached to Plaintiff's Motion for Leave to Amend and Supplement Complaint, was an unexecuted copy of an assignment of claim from MARINE CITY NURSERY COMPANY (Dkt. 65). The executed copy of the assignment of claims from MARINE CITY NURSERY COMPANY, was later filed on March 13, 1998 (Dkt. 87). Plaintiff's Motion for Leave to Amend and Supplement Complaint (Dkt. 65), asserts that:

1. The action has been brought by SENGER BROTHERS NURSERY INC., a Michigan Corporation, authorized to do business in the State of Florida. When SENGER BROTHERS NURSERY, INC. was formed and became authorized to do business in the State of Florida, its sister company MARINE CITY NURSERY

COMPANY, a Michigan corporation, ceased doing business in the State of Florida. (Dkt. 65, Paragraph 2).

2. The invoices attached to the Complaint, representing a portion of the Benlate sold by Retail Defendants, HELENA CHEMICAL COMPANY and ASGROW FLORIDA COMPANY, were directed to MARINE CITY NURSERY COMPANY. MARINE CITY NURSERY COMPANY is SENGER BROTHERS NURSERY, INC.'s sister company and the previous operator of the nursery tracts in Hardee County, Florida. (Dkt. 65, Paragraph 3).

3. MARINE CITY NURSERY COMPANY and SENGER BROTHERS NURSERY, INC. are both duly organized and existing corporations in the State of Michigan, however, SENGER BROTHERS NURSERY, INC. is the only corporate entity that has conducted business in the State of Florida since 1989. The corporations are virtually identical with respect to their shareholders, officers and directors. There is a common identity of these corporate entities making them virtually indistinguishable. (Dkt. 65, Paragraph 4).

4. Recently, MARINE CITY NURSERY COMPANY has formalized the assignment of its claims against the Defendants, E.I. DUPONT DE NEMOURS & COMPANY, HELENA CHEMICAL COMPANY, and ASGROW FLORIDA COMPANY, to SENGER BROTHERS NURSERY, INC. (Dkt. 65, Paragraph 5).

5. So as to avoid confusion with respect to the proper party plaintiff in this action and to acknowledge through pleading, be it amendment or supplementation, that the claims that are the subject of this litigation are properly brought by the Plaintiff, SENGER BROTHERS NURSERY, INC., wishes to amend its Complaint and reflect the execution and delivery of the assignment from MARINE CITY NURSERY COMPANY. (Dkt. 65, Paragraph 6).

6. There is no prejudice to the Defendants, E.I. DUPONT DE NEMOURS & COMPANY, HELENA CHEMICAL COMPANY, and ASGROW FLORIDA COMPANY, in that all Defendants have conducted extensive discovery both with respect to the books and records of SENGER BROTHERS NURSERY, INC. and MARINE CITY NURSERY COMPANY as well as the damages accruing to each entity. Based on the documents requested by the Defendants and provided in response to those requests, there is no surprise or absence of factual information that would be prejudicial to the Defendants. (Dkt. 65, Paragraph 7).

On March 9, 1998, the same day Plaintiff filed its Motion for Leave to Amend and Supplement Complaint, Defendant filed a Motion for Summary Judgment (Dkt. 66). Retail Defendants entered a Joinder in Motion for Summary Judgment on March 9, 1998 (Dkt. 68). Defendant entered a Statement of Undisputed Facts, in support of its Motion for Summary Judgment, on March 9, 1998, that was corrected by filings made on March 10, 1998 and March 11, 1998 (Dkts. 66, 69, 85, 86).

Defendant's Motion for Summary Judgment asserts that:

1. Plaintiff's claims against Dupont are each separately barred by the applicable statutes of limitation. (Dkt. 66, Paragraph 1).

2. Plaintiff lacks standing to assert these claims. (Dkt. 66, Paragraph 2).

3. Plaintiff impermissibly split its causes of action when it first brought an action against Dupont in 1992 on a purported settlement of these claims. (Dkt. 66, Paragraph 3).

4. Plaintiff's claims are barred by *res judicata* and judicial estoppel. (Dkt. 66, Paragraph 4).

5. There is no legal or factual basis to support Plaintiff's fraud claims. (Dkt. 66, Paragraph 5).

On March 23, 1998, Plaintiff made a Motion to Extend Time to File a Response to Defendant's Motion for Summary Judgment (Dkts. 66, 89). Plaintiff responded to Defendant's Motion for Summary Judgment on March 30, 1998 (Dkts. 66, 92). Plaintiff filed a Request to Take Judicial Notice of Public Documents in Connection with Motion for Summary Judgment. (Dkt. 93).

## DISCUSSION

### I. Leave to Amend or Supplement

#### A. Standard of Review

◼ A decision whether to grant a motion for leave to amend a complaint is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded." *Foman*, 371 U.S. at 182, 83 S.Ct. 227. Therefore, because "this mandate is to be heeded," there must be a "justifying reason," for a court to deny leave. *See id.; see also Halliburton & Assoc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir.1985) (stating that a "substantial reason" is needed).

◼ In *Foman*, the Supreme Court indicated that a court should deny leave to amend a pleading only when: (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227.

◼ The court may also allow a party to serve supplemental pleadings, which set forth transactions, occurrences, or events that have happened since the date of the pleading to be supplemented. *See Black v. Secretary of Health and Human Serv.*, 93 F.3d 781, 789 (Fed.Cir.1996); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir.1995). However, the supplemental pleading must be upon reasonable notice and upon such terms as are just. *See Black*, 93 F.3d at 781; *Quaratino*, 71 F.3d at 66.

#### B. Good Cause

◼ While timely motions for leave to amend are held to a very liberal standard, motions for leave to amend filed after the district court's deadline as set forth in the scheduling order should be denied. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir.1998); *Payne v. Ryder Sys., Inc. Long Term Disability Plan*, 173 F.R.D. 537 (M.D.Fla.1997). If the party seeking amend-

ment can show the court "good cause" as to why the court should not follow the scheduling order deadlines, the court should allow amendment. *See Sosa*, 133 F.3d at 1417; *Payne*, 173 F.R.D. at 537.

In the case at hand, Plaintiff has not stated any reason for its delay in seeking amendment (Dkt. 65). Plaintiff merely asserts that the amendment should be permitted because there is no undue delay, bad faith, dilatory tactics, or undue prejudice to the Defendant and Retail Defendants (Dkt. 65). These statements do not address Plaintiff's delay, as required under *Sosa* and *Payne*. *See Sosa*, 133 F.3d at 1417; *Payne*, 173 F.R.D. at 537.

#### C. Undue Delay

◼ Leave to amend a complaint should be denied when the moving party has unduly delayed in bringing the motion before the court. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227. In *Sosa v. Airprint Sys., Inc.*, 133 F.3d at 1418, n. 2, the Eleventh Circuit Court of Appeals affirmed the denial of a motion to amend, after the deadline set for filing motions with the court had passed, and where the movant had previous knowledge of the facts pertinent to the proposed amendment.

◼ In *Robertson v. White*, 111 F.R.D. 607 (W.D.Ark.1986), the United States District Court for the Western District of Arkansas addressed the issue of "sandbagging" defendants. The court stated that where a plaintiff has it within his power to file a motion before a cutoff date, the plaintiff should file the motion in a timely manner. *See id.* at 611. When a plaintiff chooses to wait an artificially delayed period, which enables him to benefit from discovery of issues, or a lack thereof, the defendant is being "sandbagged." *See id.* at 611. The defendants are, subsequently, forced to entail expenses that would have never arisen if plaintiff had acted in a timely fashion. *See id.* at 611.

A year and six months after this action was removed to federal court, five months after the case was scheduled for trial, one year after the discovery cutoff date, and more than ten months after the deadline for filing motions, Plaintiff seeks to amend and

supplement the complaint to reflect the execution and delivery of an assignment of claims from MARINE CITY NURSERY COMPANY (Dkt. 65). Plaintiff did not seek amendment and supplementation of its Complaint, within the limits of the Case Management and Scheduling Order, although Plaintiff has had knowledge of the facts giving rise to the amendment and supplementation (Dkt. 65). Plaintiff and MARINE CITY NURSERY COMPANY are "virtually identical with respect to their shareholders, officers and directors," and hold a common identity making them "virtually indistinguishable." (Dkt. 65, Paragraph 4). Due to the common identity between Plaintiff and MARINE CITY NURSERY COMPANY, Plaintiff had the ability to obtain the assignment of claims at an earlier date (Dkt. 65). However, Plaintiff delayed in obtaining the assignment of claims and in making the Motion for Leave to Amend and Supplement Complaint, until after the discovery cutoff date and after the deadline for submission of motions to the Court had passed (Dkt. 65). Like the plaintiff in *Sosa*, Plaintiff, in the case at hand, has not learned of any new facts or information that would support its proposed amendment. *See Sosa*, 133 F.3d at 1418, n. 2. To now permit Plaintiff to amend and supplement the Complaint would reward Plaintiff for delaying the filing of this motion until after the discovery cutoff date and the deadline for submission of dispositive motions to the Court.

### D. Undue Prejudice

■ Leave to amend a complaint should be denied when granting the proposed amendment will result in unfairness to the party in opposition of the amendment. *See Van Harlingen v. Dunedin*, 6 Fla. Law. Weekly Fed. D 105 (M.D.Fla.1992) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). Motions for leave to amend can prejudice the nonmoving party, when the request for leave to amend is not made in a timely manner. *See id.* Motions to amend have been denied where the information, that the motion to amend was based on, was previously available to the plaintiff and where additional discovery would be required

of the opposing party. *See id.* (citing *Conroy v. Datsun Ltd. v. Nissan Motor Corp. in U.S.A.*, 506 F.Supp. 1051, 1054 (N.D.Ill. 1980)). This Court has also recognized that "it is incumbent upon the movant to show that the information upon which the new claim is based was unknown or unavailable prior to filing the motion." *See Van Harlingen*, 6 Fla.Law Weekly Fed. D 105 (citing *Conroy*, 506 F.Supp. at 1054).

■ In the case at hand, there is no indication that information relating to the necessity of obtaining an assignment of claim from MARINE CITY NURSERY COMPANY was unavailable to Plaintiff (Dkt. 65). On the contrary, Plaintiff states that the two corporations are "virtually identical with respect to their shareholders, officers and directors," and that there is a "common identity," between the corporate entities "making them virtually indistinguishable." (Dkt. 65, Paragraph 4).

The case at hand has been pending for a year and six months and the discovery cutoff date of January 30, 1998 passed over a year ago (Dkt. 63). By amending the Complaint to add the assignment of MARINE CITY NURSERY COMPANY's claims, Defendant asserts that it would have to, at a minimum, conduct and reconduct depositions, thoroughly examine the chemical purchase records of MARINE CITY NURSERY COMPANY, obtain price lists for plants sold by MARINE CITY NURSERY COMPANY, investigate suppliers used by MARINE CITY NURSERY COMPANY, retain potential expert witnesses, and completely revise Defendant's damage analysis (Dkt. 88).

Plaintiff, in the case at hand, claims that there is no prejudice to either the Defendant or Retail Defendants because Defendant and Retail Defendants have had an opportunity to discover information with respect to both the Plaintiff and MARINE CITY NURSERY COMPANY (Dkt. 65). If Plaintiff expected the Defendant and Retail Defendants to discover information sufficient to overcome claims of undue delay and undue prejudice, Plaintiff could also have discovered this information. In this case, discovery was not permitted after January 30, 1998 (Dkt. 63).

Motions did not need to be submitted until March 9, 1998 (Dkt. 63). This gave Plaintiff more than 30 days, after the end of discovery, to locate the information needed, the same information Plaintiff claims Defendant and Retail Defendants discovered, and file a Motion to Amend and Supplement. If the Court were to grant Plaintiff's Motion to Amend and Supplement Complaint, (Dkt. 65), it would almost certainly require that discovery be reopened and that the trial be further delayed. *See Technical Resource Services, Inc. v. Dornier Medical Sys., Inc.,* 134 F.3d 1458, 1463–66 (11th Cir.1998) (addressing a plaintiff's undue delay in filing its motion to amend).

In *Technical Resource Services, Inc.,* the Eleventh Circuit Court of Appeals stated that where a defendant was on notice of the need for plaintiff's amendment, before the end of discovery, the plaintiff must also have been on notice of the need to amend before the end of discovery. *See id.* The court also observed that where a plaintiff, with knowledge before the end of discovery, inexplicably waits until after discovery ends to file a motion to amend, the motion to amend must be denied to avoid undue delay and prejudice to the defendant. *See id.*

### E. Futility

█ If a complaint, as it is sought to be amended, is subject to dismissal, a court should not grant leave to amend. *See Halliburton & Assoc., Inc. v. Henderson, Few & Co.,* 774 F.2d 441, 444 (11th Cir.1985) (citing *Pan Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539 (5th Cir.1980)); *Pohto v. Leiser,* 738 F.Supp. 474, 477 (M.D.Fla.1990) (stating that a motion to amend a complaint should not be allowed were "[j]ustice and judicial economy would not be served ..." because the claims, as amended, would also be subject to dismissal).

█ Claims must be filed before the running of the statutes of limitation or the claims are barred as a matter of law. *See Veltmann v. Walpole Pharmacy, Inc.,* 928 F.Supp. 1161, 1164 (M.D.Fla.1996). When a federal cause of action is founded on diversity of citizenship, the court must apply the state statutes of limitation. *See id.* (citing

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Int'l Union of Operating Eng'rs v. Fischbach & Moore, Inc.,* 350 F.2d 936 (9th Cir.1965)). The United States District Court for the Middle District of Florida has stated that, when a federal court adopts state statutes of limitation, the court also adopts the state court's construction and interpretations of the statute. *See Veltmann,* 928 F.Supp. at 1164 (citing *Security Trust Co. v. Black River Nat'l Bank,* 187 U.S. 211, 23 S.Ct. 52, 47 L.Ed. 147 (1902)).

Florida statutes of limitation are contained in § 95.11. *See* Fla.Stat. § 95.11. Tolling of Florida's statutes of limitation is permitted in precise situations set out within Florida Statute § 95.051. *See* Fla.Stat. § 95.051. Federal Rule of Civil Procedure 23, which is the federal counterpart to Florida Rule of Civil Procedure 1.220, addresses class action suits and the procedural provisions applying to them. *See* FED.R.CIV.P. 23; FLA.R.CIV.P. 1.220. The plain language of both Florida Rule 1.220 and Federal Rule 23, does not address the tolling of a statute of limitation based on the filing of a class action suit. *See id.* Florida Statute § 95.051 addresses the issue of tolling statutes of limitation, while federal judge-made law addresses the tolling of statutes of limitation upon the filing of a class action suit. *See id.* The Florida Supreme Court has recently addressed the issue of tolling statutes of limitation, under Florida Statute § 95.051. *See Fulton County Administrator v. Sullivan,* 22 Fla.L. Weekly S578, —— So.2d —— (Fla. September 25, 1997). The Florida Supreme Court stated that only in limited situations, which are specifically enumerated by Florida Statute § 95.051, are statutes of limitation tolled. *See id.*

In *Walker v. Armco Steel Corp.,* 446 U.S. 740, 744–45, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Supreme Court of the United States addressed the "troubling" question of whether or not state law should be applied to issues arising out of a claim brought in federal court based on diversity of citizenship. In deciding the outcome of this question, the Supreme Court of the United States looked to several established precedents. *See id.*

The Court first looked to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which overturned *Swift v. Tyson*, 16 Pet. 1, 10 L.Ed. 865 (1842). *Swift* held that federal courts, hearing claims founded on diversity of citizenship, did not have to apply the non-statutory law of the state in matters of "general jurisprudence." *See Erie*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Erie*, the Supreme Court stated that "[except] in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any [diversity] case is the law of the state." *See Erie*, 304 U.S. at 78, 58 S.Ct. 817.

In *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), the Supreme Court stated that a federal court does not have the ability to give a claim a "longer life" in federal court, than it would have had in state court. *See Ragan*, 337 U.S. at 533–34, 69 S.Ct. 1233. The Court reasoned that holding otherwise would be inconsistent with *Erie* and *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (holding that the *Erie* doctrine applies to claims in equity as well as to actions in law). *See id.* The Court also stated that where a provision, contained in state rules or laws, is an integral part of the state statutes of limitation, the state provisions control. *See Walker*, 446 U.S. at 746, 100 S.Ct. 1978.

In 1965, the Supreme Court addressed the question of whether, in a civil action brought in federal court on diversity of citizenship, Rule 4(d)(1) of the Federal Rules of Civil Procedure controlled the manner in which service of process was administered. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). In *Hanna*, there was a direct conflict between the state rule and Federal Rule of Civil Procedure 4(d)(1). *See id.* The Court held that Rule 4(d)(1) of the Federal Rules of Civil Procedure, instead of state law, governed the manner in which service of process was administered. *See id.* Again, the Court looked to the aims of *Erie* and *York* when deciding that the Federal Rule would overcome the rule of the state. *See id.* The Court stated that the difference between the state in-hand service rule and

the federal rule was of such little significance to the forum choice that Plaintiff, "was not presented with a situation where application of the state rule would wholly bar recovery, rather, adherence to the state rule would have resulted only in altering the way in which process was served." *See Hanna*, 380 U.S. at 469, 85 S.Ct. 1136.

The Court in *Hanna* also stated that *Erie* could not demand that an inconsistent state rule overcome a Federal Rule of Civil Procedure, but that the proper analysis was whether or not the Federal Rule of Civil Procedure was as broad as the losing party claimed. *See id.* Where the Federal Rule of Civil Procedure was not as broad as the losing party claimed, and therefore no Federal Rule of Civil Procedure covered the point at issue, *Erie* demanded the enforcement of state law. *See Hanna*, 380 U.S. at 470, 85 S.Ct. 1136. The Court stated that where the federal rule was applicable, as in *Hanna*, a court must decide whether the federal rule is within the scope of the enabling act and within the scope of a constitutional grant of power. *See Hanna*, 380 U.S. at 470–72, 85 S.Ct. 1136.

In the latest Supreme Court case addressing the issue of whether federal rules overcome state rules, in claims brought in federal court on diversity of citizenship, the Court addresses the apparent inconsistency between *Ragan* and *Hanna*. *See Walker*, 446 U.S. at 749–750, 100 S.Ct. 1978. The Court stated that *Hanna* did not overrule *Ragan;* it merely distinguished it. *See id.* *Hanna* applies to situations where a "direct collision" occurs between the federal rule and state law. *See Walker*, 446 U.S. at 750, 100 S.Ct. 1978.

In *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 916–18 (11th Cir.1989), the Eleventh Circuit interpreted the "sticky" question of whether to apply federal law or state law to claims brought in federal court, founded on diversity of citizenship. The Eleventh Circuit interpreted the step-by-step analysis of *Hanna*, *Ragan*, and *Walker* to simplify the process of answering issues regarding application of federal or state law. *See id.*

The Eleventh Circuit first looked to the Supreme Court's holding in *Hanna* and determined that the first decision a district court should make, when deciding whether to apply a federal rule or Congressional statute, where the federal rule or statute and state law seemingly conflict, is whether the federal rule or Congressional statute is "sufficiently broad to control the issue before the court." *See id.* The court states that a district judge must look to the straightforward statutory interpretation of the federal rule to determine if it is sufficiently broad to cover the disputed issue. *See id.*

If the federal rule or Congressional statute is sufficiently broad to cover the issue in dispute, the district court should next determine whether the statute is a valid exercise of Congressional power. *See id.* If Congress acted within its Congressional power, the analysis is over and the federal rule or Congressional statute will apply over the state rule. *See Thayer,* 877 F.2d at 916–18. If the federal rule or Congressional statute is outside Congress' power, the state law should be applied. *See id.*

When the federal rule or statute does not cover the disputed issue sufficiently, *Hanna* states that the district court should consider the applicability of federal judge-made law. *See Hanna,* 380 U.S. at 469–72, 85 S.Ct. 1136; *Alexander,* 877 F.2d at 916–18. The district court must look to the purposes and aims of *Erie,* when deciding to apply federal judge-made law. *See id.* If applying the federal judge-made law will encourage forum shopping and result in an inequitable administration of the laws, the district court should apply state law. *See id.*

█ In the case at hand, Plaintiff claims that Federal Rule of Civil Procedure 23 requires tolling of the state statutes of limitation, during the pendency of a class action suit (Dkt. 92). Florida Statutes require claims for strict liability, negligence, fraud, breach of implied warranty, and breach of oral contracts to be commenced within four (4) years. *See* Fla.Stat. § 95.11(3)(a), (e), (j), (k), and (p). Florida Statutes, further, require claims for breach of express warranty to be brought within five (5) years. *See* Fla.Stat. § 95.11(2)(b).

Plaintiff relies on *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (stating that the commencement of a federal class action suit tolls the statutes of limitation for all asserted members of the class who would have been parties to the action), and *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (stating that the filing of a class action tolls the applicable statutes of limitation and permits individual members of the class to file suit within the remaining limitations time, when class status is denied), to show that tolling of statutes of limitation, during the pendency of a class action suit. (Docket Nos. 48, 92). However, Plaintiff's reliance on *American Pipe* and *Crown* is misplaced. *American Pipe* and *Crown* did not involve a claim brought in federal court on diversity of citizenship. *See American Pipe,* 414 U.S. at 540, 94 S.Ct. 756 (claiming violations of § 1 of the Sherman Act, the Clayton Act, and the False Claims Act); *Crown,* 462 U.S. at 346, 103 S.Ct. 2392 (alleging a violation of the Civil Rights Act).

Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23. *See* FED.R.CIV.P. 23; FLA.R.CIV.P. 1.220. Due to this consistency between Florida Rule of Civil Procedure 1.220 and Federal Rule of Civil Procedure 23, Plaintiff claims that the Court should apply the federal interpretation of Rule 23 to Florida Rule of Civil Procedure 1.220 (Dkts. 48, 92). Plaintiff further states that if the federal court applied the federal interpretation of Rule 23 to Florida Rule 1.220 tolling is required (Dkts. 48, 92). However, Florida Statute § 95.051 sets out the limited situations where a statute of limitations is tolled.

The analysis in *Hanna* does not apply to the case at hand. *See Walker,* 446 U.S. at 752–53, 100 S.Ct. 1978. The *Hanna* analysis applies only in situations where there is a direct conflict between state law and federal law. *See id.* In the case at hand, Federal Rule 23 is not in direct conflict with Florida rules or laws. *See* FED.R.CIV.P. 23; FLA. R.CIV.P. 1.220. Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23. *See id.* If Florida Rule

1.220 and Florida Statute § 95.051, which sets out the specific situations where Florida statutes of limitation are tolled, can exist simultaneously within Florida, so can federal rule 23 and Florida Statute § 95.051. *See Walker*, 446 U.S. at 751–52, 100 S.Ct. 1978 (stating that where Oklahoma Statutes §§ 97 and 151 can exist simultaneously in state court, so can § 97 and the federal rule it is patterned after).

Since there is no direct conflict between Federal Rule of Civil Procedure 23 and Florida law, the Court must look to the policies behind *Erie* and *Ragan* to decide whether, in the absence of a federal rule directly on point, state tolling requirements, which are an integral part of the state statute of limitations, should control. *See Walker*, 446 U.S. at 752–53, 100 S.Ct. 1978.

The policies and holdings of *Erie* and *Ragan* do not allow the Court to proceed through the litigation of Plaintiff's claims in federal court, which would be barred in state court by the state's statutes of limitation. *See Ragan*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); *Erie*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In a light most favorable to Plaintiff, Plaintiff and MARINE CITY NURSERY COMPANY had actual knowledge of Defendant's recall of Benlate 50 DF, as shown by Plaintiff's written claim to Defendant and Plaintiffs attribution of plant damage to the application of Benlate 50 DF, no later than June 14, 1991 (Dkts. 42, 43).

Under Florida Statute § 95.031(2) the statute of limitations begins to run "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Under Florida law, the applicable statutes of limitation are four (4) years for strict liability, negligence, fraud, breach of implied warranty, and breach of an oral contract. *See* Fla.Stat. § 95.11. Breach of express warranty and breach of contract, founded on a written instrument, must be commenced within five (5) years. *See* Fl. Stat. § 95.11. Thus, Plaintiff's claims, as amended, if amendment were permitted, had to be filed no later than June 14, 1995, for Counts I, II, III, IV, V, VI, VIII, IX, XI, XIII, and XIV. Counts VII, X, XII, and XV, as amended, if amendment was permitted, had to be filed by June 14, 1996. Even if Plaintiff's Motion to Amend and Supplement Complaint was granted, Plaintiff's claims would be barred by the applicable state statutes of limitation. *See* Fla.Stat. § 95.11. As such, it would be futile for this Court to permit Plaintiff to amend or supplement its Complaint.

## II. Retail Defendants' Motion for Summary Judgment

### A. Standard of Review

Summary Judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

> The plain language of Rule 56(c) mandates that the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue of material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record that demonstrate the absence of genuine issues of material fact. *See id.* That burden can be discharged by "showing ... that there is an absence of evidence to support the nonmoving party's case." *See id.* at 323, 325, 106 S.Ct. 2548.

684

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505.

In determining whether a material fact exists, the court must consider all the evidence in a light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir.1979) (quoting *Gross v. Southern R.R. Co.,* 414 F.2d 292 (5th Cir.1969)).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of "nothing more than a repetition of his conclusional allegations" summary judgment is not only proper but required. *See Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

### B. Discussion

Retail Defendants' Motion for Summary Judgment asserts that Counts VI, VII, VIII, IX, X, XI, XII, XIII, XIV, and XV are barred by the applicable statutes of limitation. *See* Fla.Stat. § 95.11. Plaintiff's claims of strict liability, breach of implied warranty, and breach of oral contract must be commenced within four (4) years "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." *See* Fla.Stat. §§ 95.11(3)(b), (e), (k), (p); 95.031(2). Plaintiff's claim of breach of express warranty must be commenced within five (5) years. *See* Fla.Stat. § 95.11; *Byington v. A.H. Robins Co., Inc.,* 580 F.Supp. 1513, 1515 (M.D.Fla.1984). The knowledge required to commence the running of the statutes of limitation does not need to be a

legal certainty. *See University of Miami v. Bogorff,* 583 So.2d 1000, 1004 (Fla.1991). Plaintiff must only have notice of the possible invasion of their legal rights. *See Doe v. Cutter Biological,* 813 F.Supp. 1547 (M.D.Fla.1993) *aff'd* 16 F.3d 1231 (11th Cir. 1994). Florida law does not allow the tolling of statutes of limitation for any other reason than those specifically enumerated in Florida Statute § 95.051. *See Fulton County Administrator v. Sullivan,* 22 Fla.L. Weekly S578, —— So.2d —— (Fla. September 25, 1997). Florida Statute § 95.051 does not allow tolling, for the claims asserted in the instant cause of action.

Taken in the light most favorable to Plaintiff, Plaintiff had actual knowledge of the facts giving rise to this cause of action on or before June 14, 1991 (Dkts. 42, 43). Plaintiff acknowledged in its letter to Dupont, dated June 14, 1991, that its nursery was damaged by the allegedly defective Benlate 50 DF. (Dkts. 42, 43). Therefore, Plaintiff had four (4) years from June 14, 1991, to bring its claims of strict liability, breach of implied warranty, and breach of oral contract against Retail Defendants. *See* Fla.Stat. § 95.11. Plaintiff had five (5) years from June 14, 1991 to bring its claims of breach of express warranty against Retail Defendants. *See* Fla.Stat. § 95.11. Plaintiff did not file suit against Defendant and Retail Defendants until June of 1997, which is outside the applicable statutes of limitation, as set out in Florida Statute § 95.11.

The Court finds that Plaintiff's claims are time-barred and Retail Defendants are entitled to judgment as a matter of law.

### III. Defendant's Motion for Summary Judgment

Defendant's Motion for Summary Judgment asserts that Plaintiff's claims are barred by the applicable statutes of limitation, that statutory tolling does not apply, that Plaintiff lacks standing to assert a claim, that Plaintiff has impermissibly split its causes of action, that Plaintiff's claims are barred by *res judicata* and judicial estoppel, and that there is no legal or factual basis for Plaintiff's claims of fraud. (Dkt. 67).

Plaintiff's claims of strict liability, negligence, and fraud against Defendant must be commenced within four (4) years "from the time the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." *See* Fla.Stat. § 95.031(2); *Byington*, 580 F.Supp. at 1515. The knowledge required to commence the running of the statutes of limitation does not need to be a legal certainty. *See Bogorff*, 583 So.2d at 1004. Plaintiff must only have notice of the possible invasion of their legal rights. *See Doe v. Cutter Biological*, 813 F.Supp. 1547 (M.D.Fla.1993) *aff'd* 16 F.3d 1231 (11th Cir. 1994). Florida Statute § 95.051 does not permit tolling of statutes of limitation for any reason, other than those specifically included in the statute. *See* Fla.Stat. § 95.051; *Sullivan*, 22 Fla.L. Weekly S578, —— So.2d ——.

Plaintiff's claims are not tolled under Florida Statute § 95.051. Therefore, after considering the issues in the light most favorable to Plaintiff, Plaintiff had until June 14, 1995, to file its claims against Defendant. Plaintiff's claims were not filed until June of 1997, which is outside the applicable statutes of limitation, as set out in Florida Statute § 95.11.

The Court finds that Plaintiff's claims are time-barred and Defendant is entitled to judgment as a matter of law. Because the Court finds that Plaintiff's claims are barred by the statute of limitations, it is unnecessary to address Defendant's claims that Plaintiff lacks standing to assert a claim, that Plaintiff has impermissibly split its causes of action, that Plaintiff's claims are barred by *res judicata* and judicial estoppel, and that Plaintiff has no legal or factual basis to claim fraud.

*IV. Plaintiff's Request to Take Judicial Notice of Public Documents in Connection with Motion for Summary Judgment*

█ Plaintiff requests that this Court take judicial notice of a copy of a State of Michigan Corporate Record for Senger Brothers Nursery, Inc., a copy of a State of Michigan Corporate Record for Marine City Nursery Co., a copy of a State of Florida Corporate Record for Senger Brothers Nurs-ery, Inc., a copy of a State of Florida Corporate Record for Marine City Nursery Co., a copy of a Recorded Deed to Highway 66 East Nursery, and a copy of a Recorded Deed to Cecil Langford/Sweetwater Tract, as public documents. (Dkt. 93).

Under Federal Rule of Evidence 201(d), a court is required to take judicial notice when a party requests it and when that party supplies the court with the necessary information. Federal Rule of Evidence 201 applies only to adjudicative facts that are not subject to "reasonable dispute". *See* FED. R.EVID. 201(a), (b). A reasonable dispute exists when the fact is not "generally known within the territorial jurisdiction of the trial court," or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* FED.R.EVID. 201(b).

In the case at hand, Plaintiff asserts that copies of the above listed documents satisfy Federal Rule of Evidence 201. (Dkt. 93). The Court finds that copies, of the above listed documents, are not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and are not "generally known within the territorial jurisdiction of the trial court." *See* FED.R.EVID. 201(b). Accordingly, it is

**ORDERED** that Plaintiff's Motion for Leave to Amend and Supplement Complaint (Dkt. 65) is **denied;** that Retail Defendants' Motion for Summary Judgment (Dkt. 39) is **granted;** and Defendant's Motion for Summary Judgment (Dkt. 66) is **granted;** that Plaintiff's Motion for Judicial Notice is **denied;** the Clerk of the Court is **directed** to enter a final judgment in favor of Defendants.

**DONE and ORDERED.**